W (Rev. EDNY 1996) Warrant for Arrest

# UNITED STATES DISTRICT COURT

__EASTERN__ DISTRICT OF __NEW YORK__

UNITED STATES OF AMERICA

V.

CHRISTIAN CARDONA,

    Defendant.

**WARRANT FOR ARREST**

CASE NUMBER: **04 0428 M**

TO: Special Agent Manny DeCastro, Department of Homeland Security, Immigration and Customs Enforcement or any Authorized United States Officer

YOU ARE HEREBY COMMANDED to arrest __CHRISTIAN CARDONA__
                                                                                                  Name

and bring him forthwith to the nearest magistrate to answer a(n)

☐ Indictment ☐ Information ☒ Complaint ☐ Order of Court ☐ Violation Notice ☐ Probation Violation Petition

charging him with (brief description of offense)

knowingly and intentionally conspiring to import into the United States from a place outside thereof a substance containing heroin, a Schedule I controlled substance.

in violation of Title __21__ United States Code, Section(s) __963__

HON. LOIS BLOOM
Name of Issuing Officer

[signature: Lois Bloom]
Signature of Issuing Officer

UNITED STATES MAGISTRATE JUDGE
Title of Issuing Officer

March 26, 2004
Brooklyn, New York
Date and Location

Bail fixed at $_____ By UNITED STATES MAGISTRATE JUDGE

## RETURN

This warrant was received and executed with the arrest of the above name defendant at:

| DATE RECEIVED | NAME AND TITLE OF ARRESTING OFFICER: | SIGNATURE OF ARRESTING OFFICER |
|---|---|---|
| DATE OF ARREST | | |

AW (Rev. EDNY 1995) Warrant for Arrest

THE FOLLOWING IS FURNISHED FOR INFORMATION ONLY:

W (Rev. EDNY 1906) Warrant for Arrest

# UNITED STATES DISTRICT COURT

___EASTERN___ DISTRICT OF ___NEW YORK___

UNITED STATES OF AMERICA

V.

**WARRANT FOR ARREST**

VICTOR LEBRON,

Defendant.

CASE NUMBER:

TO: Special Agent Manny DeCastro, Department of Homeland Security, Immigration and Customs Enforcement or any Authorized United States Officer

04  0423M

YOU ARE HEREBY COMMANDED to arrest ___VICTOR LEBRON___

Name

and bring him forthwith to the nearest magistrate to answer a(n)

[ ] Indictment  [ ] Information  [X] Complaint  [ ] Order of Court  [ ] Violation Notice  [ ] Probation Violation Petition

charging him with (brief description of offense)

knowingly and intentionally conspiring to import into the United States from a place outside thereof a substance containing heroin, a Schedule I controlled substance.

in violation of Title __21__ United States Code, Section(s) __963__

HON. LOIS BLOOM
Name of Issuing Officer

UNITED STATES MAGISTRATE JUDGE
Title of Issuing Officer

_(signature)_
Signature of Issuing Officer

March 26, 2004
Brooklyn, New York
Date and Location

Bail fixed at $ _____ By UNITED STATES MAGISTRATE JUDGE

## RETURN

This warrant was received and executed with the arrest of the above name defendant at:

| DATE RECEIVED | NAME AND TITLE OF ARRESTING OFFICER: | SIGNATURE OF ARRESTING OFFICER |
|---|---|---|
| DATE OF ARREST | | |

AW (Rev.EDNY 1996) Warrant for Arrest

THE FOLLOWING IS FURNISHED FOR INFORMATION ONLY:

W (Rev. EDNY 1996) Warrant for Arrest

# UNITED STATES DISTRICT COURT

__EASTERN__ DISTRICT OF __NEW YORK__

UNITED STATES OF AMERICA

V.

ANTHONY DIMUZIO,

Defendant.

**WARRANT FOR ARREST**

CASE NUMBER: **04 0423M**

TO: Special Agent Manny DeCastro, Department of Homeland Security, Immigration and Customs Enforcement or any Authorized United States Officer

YOU ARE HEREBY COMMANDED to arrest __ANTHONY DIMUZIO__
                                                Name

and bring him forthwith to the nearest magistrate to answer a(n)

[ ] Indictment   [ ] Information   [X] Complaint   [ ] Order of Court   [ ] Violation Notice   [ ] Probation Violation Petition

charging him with (brief description of offense)

knowingly and intentionally conspiring to import into the United States from a place outside thereof a substance containing heroin, a Schedule I controlled substance.

in violation of Title __21__ United States Code, Section(s) __963__ )

HON. LOIS BLOOM
Name of Issuing Officer

UNITED STATES MAGISTRATE JUDGE
Title of Issuing Officer

*(signature)*
Signature of Issuing Officer

March 25, 2004
Brooklyn, New York
Date and Location

Bail fixed at $ _____  By UNITED STATES MAGISTRATE JUDGE

| RETURN |
|---|
| This warrant was received and executed with the arrest of the above name defendant at: |

| DATE RECEIVED | NAME AND TITLE OF ARRESTING OFFICER: | SIGNATURE OF ARRESTING OFFICER |
|---|---|---|
| DATE OF ARREST | | |

AW (Rev. EDNY 1996) Warrant for Arrest

THE FOLLOWING IS FURNISHED FOR INFORMATION ONLY:

AMG:TMM

**04 0423M**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

   - against -

CHRISTIAN CARDONA, VICTOR LEBRON
and ANTHONY DIMUZIO,

             Defendants.

- - - - - - - - - - - - - - - -X

SEALED COMPLAINT AND
AFFIDAVIT IN SUPPORT OF
APPLICATION FOR AN
ARREST WARRANT

(21 U.S.C. § 963)

EASTERN DISTRICT OF NEW YORK, SS:

    MANNY DECASTRO, being duly sworn, deposes and states that he is a Special Agent of the Department of Homeland Security, Immigration and Customs Enforcement, duly appointed according to law and acting as such.

    Upon information and belief, in or about and between May 18, 2003 and the June 3, 2003, within the Eastern District of New York and elsewhere, the defendants CHRISTIAN CARDONA, VICTOR LEBRON, ANTHONY DIMUZIO and others did knowingly, intentionally and unlawfully conspire to import into the United States from a place outside thereof a substance containing heroin, a Schedule I controlled substance.

    (Title 21, United States Code, Section 963).

    The source of your deponent's information and the grounds for his belief are as follows:[1]

---

[1] Because the purpose of this Complaint is to set forth only those facts necessary to establish probable cause, I have not described all the relevant facts and circumstances of which I am aware.

                                                                2

   1.  I am a Special Agent of the Department of Homeland Security, United States Immigration and Customs Enforcement ("ICE"). I have been a Special Agent for approximately three years. I am currently assigned to a narcotics smuggling unit out of John F. Kennedy International Airport. As a Special Agent, I am currently assigned to investigations relating to among, other things, importation and distribution of narcotics. As part of my responsibilities, I have been involved in hundreds of investigations pertaining to narcotic trafficking. Through my experience in these investigations, I have become familiar with the methods used by narcotic traffickers to further their goals.

   2.  The factual information supplied in this application and affidavit is based upon my investigation, upon information provided to me by other law enforcement officers and upon interviews of witnesses. Where the contents of documents or transactions, conversations or statements of others are related therein, they are related in substance and part, unless otherwise indicated.

   3.  On or about June 3, 2003, two individuals arrived at John F. Kennedy International Airport ("J.F.K. Airport") in Queens, New York, aboard Avianca Airlines Flight No. 020 from Bogota, Colombia. Both of the individuals ("CW-1" and "CW-2")[2/]

---

[2/] CW-1 and CW-2, are presently facing charges in the Eastern District of New York related to conspiracy to import heroin and are presently attempting to cooperate with the government in the hope of signing into a cooperation agreement so that they may receive lesser sentences.

3

were selected for a Customs examination, during which the Customs Inspectors noticed that both CW-1 and CW-2 appeared nervous and avoided eye contact. A pat-down search of CW-1 and CW-2 revealed that they each were concealing a hard object between their legs. A subsequent partial strip search of CW-1 and CW-2 revealed that each of them had a long cylindrical object between their legs, which they each voluntarily removed from their vaginas. A probe of each of the long cylindrical objects revealed a white powdery substance, which field-tested positive for the presence of heroin. The total approximate gross weight of the cocaine found in the cylindrical objects found on CW-1 and CW-2 is 568.2 grams.

4. After being placed under arrest by Customs Agents, CW-1 and CW-2 were each read their Miranda rights, which they waived. CW-1 and CW-2 then separately stated that they knew they were importing drugs and that they were supposed to be paid between $1,500.00 and $2,000.00 upon the delivery of the drugs. CW-1 and CW-2 also told the Customs Agents, in sum and substance, that they were supposed to deliver the drugs to an individual in the lobby of the airport.

5. Thereafter, in subsequent separate meetings with the government, CW-1 and CW-2 provided the following information. CW-1 stated that on or about May 18, 2003 defendant VICTOR LEBRON contacted CW-1 to set up a meeting in Massachusetts. Upon meeting CW-1, defendant VICTOR LEBRON introduced CW-1 to defendant CHRISTIAN CARDONA. Defendants VICTOR LEBRON and CHRISTIAN CARDONA then spoke with CW-1 regarding recruiting two

MAR-30-2004 TUE 04:13 PM US CUSTOMS/BOS SAIC    FAX NO. 6175657422    P. 05
Case 1:04-mj-00802-MBB    Document 1-2    Filed 04/02/2004    Page 7 of 10
MAR-26-2004 20:01                                  7185530873    P.08/11

4

female United States citizens, with valid United States passports, to take a trip outside of the United States in order to ingest narcotics and then smuggle these narcotics into the United States. Defendants VICTOR LEBRON and CHRISTIAN CARDONA told CW-1 that each individual would be paid between $1,500.00 and $2,000.00 upon delivery of the narcotics into the United States.

6. In a subsequent meeting on or about May 19, 2003, CW-1 informed defendants VICTOR LEBRON and CHRISTIAN CARDONA that CW-1 did not know of any such individuals. Defendants VICTOR LEBRON and CHRISTIAN CARDONA then asked CW-1 if CW-1 wanted to make the drug smuggling trip. After accepting the offer, CW-1 recruited CW-2 on or about May 20, 2003. According to CW-1 and CW-2, CW-1 told CW-2 that they would be taking a trip outside of the United States, would ingest narcotics in order to bring the narcotics into the United States and would each get paid approximately $1500. Defendant CHRISTIAN CARDONA reiterated this information to CW-2 during a telephone conversation that same day.

7. On or about May 20, 2003, CW-1 and CW-2 received and made telephone calls from the land line in CW-1's home to defendants VICTOR LEBRON, ANTHONY DIMUZIO and CHRISTIAN CARDONA. On this same date, CW-1 and CW-2 were informed that airline tickets had been purchased and that CW-1 and CW-2 would be flying out of John F. Kennedy ("J.F.K.") International Airport in Queens, New York at 9:00 A.M. on May 21, 2003. CW-1 and CW-2

5

were also informed that they would be driven from Massachusetts to New York later that evening.

8. Defendants CHRISTIAN CARDONA and ANTHONY DIMUZIO drove CW-1 and CW-2 from Massachusetts to New York on the early morning on May 21, 2003. Upon arrival at J.F.K. International Airport, CW-1 boarded the scheduled flight to Bogota, Colombia. Due to passport problems, CW-2 was unable to fly to Bogota, Colombia with CW-1. On that same day, Defendants CHRISTIAN CARDONA and ANTHONY DIMUZIO assisted CW-2 in securing a valid U.S. passport. CW-2 departed for Colombia on May 24, 2003.

9. According to information provided by CW-1 and CW-2, Defendants VICTOR LEBRON and CHRISTIAN CARDONA would contact CW-1 and CW-2 using cellular phone number (774) 526-6467. Phone records received pursuant to a subpoena for this phone number show that the phone is in the name of CHRISTIAN CARDONA and that, on or about and between May 18 and May 31, 2003, numerous phone calls were placed and received by this cellular phone number to the land line in CW-1's home, to family members of CW-1 and CW-2, both before and during the time period in which CW-1 and CW-2 were in Colombia, to a local cab company in Queens, New York, and to the numbers indicated in this affidavit for Defendants VICTOR LEBRON and ANTHONY DIMUZIO.

10. According to information provided by CW-1, Defendant VICTOR LEBRON would contact CW-1 using telephone number (781) 593-9518. Telephone records received pursuant to a subpoena for this phone number show that the phone is in the name

6

of Sara Lebron, defendant VICTOR LEBRON's mother, and that, on or about and between May 18 and June 3, 2003, phone calls were placed by this telephone number to the land line in CW-1's home, and to the numbers indicated in this affidavit for Defendants CHRISTIAN CARDONA and ANTHONY DIMUZIO.

11. According to information provided by CW-1 and CW-2, Defendant ANTHONY DIMUZIO would contact CW-1 and CW-2 using telephone number (781) 640-2347. Telephone records received pursuant to a subpoena for this phone number show that the phone is in the name of ANTHONY DIMUZIO and that, on or about and between May 18 and June 3, 2003, phone calls were placed by this cellular phone number to the land line in CW-1's home, to a family member of CW-2, and to the numbers indicated in this affidavit for Defendants CHRISTIAN CARDONA and VICTOR LEBRON.

12. Subsequently, CW-2 was presented with three separate photographic arrays each containing a photograph of one of the three defendants. CW-2 identified each of the defendants VICTOR LEBRON, CHRISTIAN CARDONA AND ANTHONY DEMUZIO.

7

WHEREFORE, your deponent respectfully requests that arrest warrants issue so that defendants CHRISTIAN CARDONA, VICTOR LEBRON, and ANTHONY DIMUZIO may be dealt with according to law.

_____
MANNY DECASTRO
Special Agent
Immigration and Customs
Enforcement

Sworn to before me this
26th day of March, 2004

_____
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK